## WHEELING BRIDGE & T. RY. CO. v. FRANZHEIM.

### (Circuit Court of Appeals, Fourth Circuit. May 2, 1899.)

### No. 277.

DIRECTING VERDICT.

In an action by a corporation against its late president to recover a sum alleged to be due, defendant pleaded a set-off and counterclaim, but died before trial. Plaintiff, to establish its claim, produced an account rendered by defendant after he had ceased being president, showing a balance due him to a large amount. The account had been voluntarily furnished, and was the only evidence offered to support the claim of plaintiff, or to impeach the items claimed by defendant. *Held,* that it was the duty of the jury to act upon and consider the whole account, as they could not arbitrarily discredit the part showing a balance due defendant; and an order of the court directing a verdict for defendant, where the counterclaim was not urged, was not error.

In Error to the Circuit Court of the United States for the District of West Virginia.

This was an action of assumpsit in the circuit court of the United States for the district of West Virginia, brought by the Wheeling Bridge & Terminal Company against Robert H. Cochran, who, up to March 18, 1892, had been president of the plaintiff corporation. The suit was instituted August 27, 1892, and the plaintiff filed as its cause of action an account of debts and credits between it and the defendant, showing a balance in its favor of $2,147.22. The defendant pleaded non assumpsit and payment, and filed a bill of offsets, and afterwards an amended bill of offsets, showing a large balance due the defendant. A trial was had, resulting in a verdict on the defendant's set-off in favor of the defendant, Cochran, against the plaintiff corporation for $1,781.98. Upon writ of error to this court, the judgment was reversed, and a new trial directed upon the ground that the defendant had been improperly allowed as part of the verdict for coupons upon bonds of the plaintiff corporation which matured after the receiver was appointed. 15 C. C. A. 321, 68 Fed. 141. Subsequently Cochran, the defendant, died, and Franzheim was appointed his administrator in West Virginia, and on April 9, 1897, the case was revived as against him in favor of the plaintiff, and was also revived in his favor as against the plaintiff. On April 6, 1898, Charles O. Brewster, who, pending this suit, had been appointed receiver to take charge of certain property mortgaged by the plaintiff corporation, applied to be admitted as a plaintiff, claiming that the funds sued for were covered by the mortgage, and by order of April 6, 1898, he was made a party plaintiff, and he moved the court to dismiss the suit on the ground that the administrator, Franzheim, had no property of his intestate in West Virginia, and that a judgment against him would be worthless, which motion the court denied. On April 7, 1898, the case was tried a second time with a jury, the only evidence to support plaintiff's claim being an account, furnished to plaintiff by the defendant, showing a balance in defendant's favor; and upon motion of the defendant the court instructed the jury to find for the defendant. The plaintiff, by writ of error, brings the rulings of the trial court here for review.

Melville D. Post, for plaintiff in error.

Henry M. Russell and Thayer Melvin, for defendant in error.

Before GOFF, Circuit Judge, and MORRIS and BRAWLEY, District Judges.

MORRIS, District Judge. The first error assigned is that the trial court denied the motion of the receiver to dismiss the case. We think this ruling was clearly right under Code W. Va. c. 126, § 9, which provides that a defendant who pleads a set-off or demand against the plaintiff shall be deemed to have brought an action against the plain-

tiff, and that the plaintiff thereafter shall not dismiss his case without the defendant's consent. The assignment of error principally urged and relied upon by the plaintiff is that the evidence required the court to submit the case to the jury, and that it was error to direct a verdict for the defendant. This raises the question of the legal effect of the evidence. The defendant, Cochran, had been, from a period prior to 1889 up to March 18, 1892, the president of the plaintiff company. On March 18, 1892, he ceased to be its president, and on June 29, 1892, he mailed from Wheeling, W. Va., to R. B. Ferris, its secretary in New York City, a statement of his account with the plaintiff company in which he charged himself with a balance due by him as per an account which had been rendered as of February 19, 1892, and cash items received by him subsequently, amounting in all to $4,046.80. He claimed credits for items of cash expended and for his salary as president at $5,000 a year to March 18, 1892. These items amounted to $1,899.58, and are admitted by the plaintiff to be correct. He also claimed as due him the sum of $7,500 "for services rendered generally and as president of the Martin's Ferry Terminal Railroad Company from October 6, 1888, and for closing up the affairs of the Wheeling & Eastern Improvement Company with the Martin's Ferry Terminal Railway, and for other services rendered the Wheeling & Eastern Improvement Company, taking care of its affairs at Wheeling since September, 1890, in the absence of its president, George P. Bissell, and for services rendered the Wheeling Bridge & Terminal Railway Company after March 18, 1892, as counsel and agent." The account thus rendered showed a balance due to Cochran of $5,352.78, and by the letter in which the account was sent Cochran demanded of the plaintiff company payment of that balance. At the trial the plaintiff, to prove its claim, produced the account thus rendered to it by Cochran, together with the deposition of Ferris, its secretary, proving the receipt of the account and Cochran's letter by him. It also gave in evidence the deposition of Ferris, in which he testified that he had met Cochran in 1890, and subsequently in Wheeling, and in January, 1892, and in March, 1892, in New York, at stockholders' and directors' meetings, and that at none of these meetings did Cochran make claim for compensation for the services for which in the account he charged the $7,500. It also offered in evidence a mortgage, dated December 2, 1889, from the plaintiff corporation to the Washington Trust Company to secure certain bonds, and under which Brewster had been appointed receiver of all the mortgaged property. The plaintiff then rested its case, and the defendant, as shown by the record, offered no testimony.

The question is whether, upon this state of proof, it was error of which the plaintiff can complain to direct a verdict for the defendant. The contention of the plaintiff is that the account rendered by the defendant, Cochran, in which he admitted that he had received the money of the plaintiff company to the amount of $4,046.80, was an admission against interest by which he was bound, and that the charges and claim in his favor on the other side of the same account were items which required affirmative proof to support them, or at least that the question should have been submitted to the jury for them to pass upon,

so that the jury, having the whole statement before them, and regarding it as a statement made by Cochran, might give such weight to his statement as to the different items as they thought they were entitled to. The plaintiff contends that the statement of Cochran which is put in evidence, so far as it was an admission that Cochran had received moneys of the company, was conclusive evidence charging Cochran with those sums; and the other part of the statement was a bare claim of Cochran's, unsupported by any proof whatever. The plaintiff conceded at the trial that the items for salary as president, and the cash items claimed by Cochran, were correct, but as to the claim for various services it contended that the account was no evidence to support that claim, and that it was entitled before the jury to urge that the plaintiff was entitled to a verdict for at least the balance in plaintiff's favor if the jury should find that the $7,500 item was unsupported by proof. The trial court, by its direction to the jury, would seem to have regarded the plaintiff as bound by the account which it put in evidence, at least to the extent that, although it was an admission by Cochran that he had received certain moneys, for which he was accountable to the plaintiff corporation, the admission was accompanied with the assertion that there were sums due him which more than counterbalanced the sums so received, which, for the purposes of the suit, nullified that part of Cochran's admission favorable to the plaintiff, and left the plaintiff without any proof upon which the jury could find a verdict for it. It would appear from the record that there was no substantial evidence before the jury except the account which Cochran had rendered to the company. The other testimony of Ferris was not such as had any probative force, either for or against the plaintiff, so that the question is narrowed down to the effect of the account rendered by the defendant containing credits and debits. Without evidence of any kind to guide them, would the jury have been justified in ignoring the part of the account which made for the defendant, and in accepting as true only that part in which the defendant charged himself? Is it true, with regard to admissions, that the jury can reject the part which is in the declarant's interest, and believe only that which is against his interest? Greenl. Ev. § 201; 2 Tayl. Ev. §§ 725, 726. But the present question is whether, without any direct or indirect evidence as to the truth, except the account itself, and with no inherent improbability in the claim made by the declarant, the jury can arbitrarily believe one part of his statement, and reject the other, and make that arbitrary discrimination the basis of a verdict. In 2 Tayl. Ev. § 726, speaking of the rule that the whole statement must be given in evidence, and that the jury must consider how much of the entire statement they, under the circumstances, consider worthy of credit, it is said:

"Simple as this rule appears, its practical application is not without difficulty. It will therefore be convenient briefly to refer to a few leading decisions. First, such rule applies equally both to written and to verbal admissions. Consequently, where a defendant has rendered a debtor and creditor account to the plaintiff, which the latter produces in proof of his demand, it will be equally admissible in evidence of the defendant's set-off, though the plaintiff will be generally at liberty, while relying on the creditor side of the account, to impeach items which appear on the debtor side."

In the present case, the plaintiff merely produced the account, and offered no evidence either to support the creditor side or to impeach the items claimed by the defendant. The defendant had died, and in this second trial it would appear from the record that no attempt was made by his administrator to support his offset by proof, and obtain a judgment in his favor against the plaintiff, such as he did obtain in the first trial. If, at the second trial, Cochran had been living, the fact itself that he did not testify in support of his claim, and submit himself to cross-examination, might have been a circumstance for the jury to consider as turning the scale against him. Or, if the account had not been furnished by Cochran of his own motion, and it appeared that, after having been pressed for an account of moneys in his hands, he had rendered an account charging this large item for services, this might have been said to be a circumstance against him. But the deposition of Ferris, put in evidence by the plaintiff, shows that Cochran promptly rendered this account, taking the initiative, and demanding payment of the balance claimed by him to be due him. The testimony of Ferris that at the meeting spoken of Cochran failed to say anything about this charge for services is of no import, because it is not shown that the subject was under consideration, or that the time had arrived for him to demand compensation. There was, in fact, nothing for the jury to act upon except the account, and the whole of that was before them, and it was their duty to consider the whole of it; and we have not been able to discover from the record any evidence or any circumstances of any probative force from which the jury could rationally determine that the credit side of the account was true, and the disputed debtor side was all false. In this failure of proof to guide the jury, it does not appear to us that it would have been right for the trial judge to have said to the jury that, while they were to consider the whole account, they were at liberty arbitrarily to discredit the part they thought least deserving of belief, when there was nothing to guide them to a rational conclusion as to which part they should believe. The burden was upon the plaintiff to the end to prove its case by a fair preponderance of evidence. We have not arrived at our conclusion without some hesitation, but, upon the whole, we think that the trial judge was right in deciding that the plaintiff had failed, and that there was no sufficient evidence upon which the jury could reasonably find for it.

It is also further urged that the funds of the plaintiff corporation which had come to the hands of Cochran were covered by the mortgage, and were properly recoverable by the receiver, but in support of this we find no evidence in the record.

It is further urged that Cochran could not, as against other creditors of the plaintiff corporation of which he was president, pay his own debt with funds in his hands, but that other creditors were entitled to share with him pro rata. This cannot be conceded, but, if it were, this is an action of assumpsit by the corporation itself, and not a proceeding by creditors, and the defense is nonavailable.

We find no error, and the judgment is affirmed.